```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

---

| | |
|---|---|
| JOAN RADOGNA, as personal representative of the Estate of Dominic Radogna, and SHERRI KRUPKA, as the personal representative of the Estate of Solomon Krupka, | 1:16-cv-5477 (NLH/KMW)<br><br>**OPINION** |
| Plaintiffs, | |
| v. | |
| ELIZABETH CONNELLY, Commissioner, New Jersey Department of Human Services, and MEGAN DAVEY, Director, New Jersey Department of Human Services, Division of Medical Assistance and Health Services, | |
| Defendants. | |

---

**APPEARANCES**:

ROXANE LOUISE CROWLEY
JANE M. FEARN-ZIMMER
ROTHKOFF LAW GROUP
425 ROUTE 70 WEST
CHERRY HILL, NJ 09002
    On behalf of Plaintiffs

GREGORY J. SULLIVAN
NEW JERSEY ATTORNEY GENERAL'S OFFICE
DIVISION OF LAW, TORT LITIGATION AND JUDICIARY
25 MARKET STREET
P.O. BOX 116
R.J. HUGHES JUSTICE COMPLEX
TRENTON, NJ 08625
    On behalf of Defendants

**HILLMAN, District Judge**

This matter arises from the denial of Dominic Radogna's and Solomon Krupka's Medicaid applications. Before the Court is Defendants' Motion to Dismiss the Amended Complaint. For the reasons that follow, the Court will grant Defendants' Motion to Dismiss.

**I.**

The Court takes its facts from Plaintiffs' November 16, 2017 Amended Complaint.

**A. Dominic Radogna's Medicaid Application**

On October 1, 2015, a Medicaid application was filed on behalf of Dominic Radogna requesting a Medicaid eligibility date of August 1, 2015. The application was filed with the Division of Medical Assistance and Health Services through the Burlington County Board of Social Services. The Burlington County Board of Social Services thereafter requested additional documents to complete the Medicaid application. These documents were timely filed. Twenty-five days after the filing of the application, Radogna died.

On November 19, 2015, the Burlington County Board of Social Services requested additional documents prior to November 30, 2015, the first Monday after the Thanksgiving holiday. This letter was not received by the Rothkoff Law Group ("RLG") until November 24, 2016, and RLG was closed for business on

Thanksgiving, November 26, 2015, and the following Friday, November 27, 2015.[1]

In response to the letter request, RLG requested an extension via e-mail, to which no response was received. RLG then followed up in-person on the extension requests. On December 18, 2015, the Burlington County Board of Social Services denied the underlying Medicaid application, based on the failure to provide the documentation requested in the November 19, 2015 notice prior to November 30, 2015.

On December 24, 2015, RLG delivered additional items that had been requested in the November 19, 2015 notice to the Burlington County Board of Social Services. RLG received the December 18, 2015 denial notice on January 6, 2016. The original denial notice had been sent to Radogna's former nursing home.

Due to the need to obtain some of the requested documentation from third-party financial institutions, a task complicated by Radogna's passing, the remaining requested documents were not available until January 2016. On January 25, 2016, RLG supplied the remaining requested documents to the Burlington County Board of Social Services.

The Burlington County Board of Social Services issued a

---

[1] RLG is the authorized agent for Radogna.

February 8, 2016 letter advising that the Medicaid application for Radogna would remain denied.  On February 18, 2016, RLG contacted the Burlington County Board of Social Services, requesting that the Medicaid denial be rescinded and Radogna's application be processed.

By way of a March 16, 2016 letter, Defendants, through the Burlington County Board of Social Services, communicated that additional time was provided prior to the December 18, 2015 denial notice to provide the requested documentation.  No new determination has been made on the Medicaid application.  The matter was scheduled for a Medicaid Fair Hearing before and Administrative Law Judge in late 2017.

**B. Solomon Krupka's Medicaid Application**

On November 9, 2015, a Medicaid application was filed on behalf of Solomon Krupka with the Division of Medical Assistance and Health Services, through the Passaic County Board of Social Services.  On November 9, 2015, the Passaic County Board of Social Services issued a letter requesting additional documents be filed to complete the Medicaid application.  The list was "vaguely worded and did not clearly state which verifications were needed to complete the Medicaid application."

Krupka's spouse obtained as many of the requested documents as she could by the December 24, 2015 deadline.  Nearly all of the requested documents were filed by December 23, 2015.  By

4

phone, RLG requested additional time to provide the remaining documents. The RLG employee was unable to reach the Medicaid caseworker and left a message.

Also on December 23, 2015, RLG mailed additional documents to the Passaic County Board of Social Services with a written request for an extension of time. No response was received, and RLG followed up with a January 26, 2016 letter, sending additional documents and requesting clarification as to whether any further documents were required. No response was received, and RLG followed up with a telephone call on February 22, 2016 to the Medicaid caseworker. The caseworker stated she had not reviewed the additional documentation and was unable to clarify whether any additional documents were required at that time. RLG then spoke with the Medicaid supervisor on March 10, 2016. The caseworker thereafter communicated that she would review the file and get back to RLG as to whether any additional documentation was required.

On April 9, 2016, the Passaic County Board of Social Services denied the underlying Medicaid application based on the failure to provide timely the requested documentation. RLG did not receive a copy of the notice until April 15, 2016, as the notice was sent directly to Krupka's nursing home. At the time, Krupka was disabled and incapacitated. Additional documents were provided to the Passaic County Board of Social Services on

June 8, 2016.

This matter proceeded to a Fair Hearing in the Office of Administrative Law on November 28, 2016. An Initial Decision was issued on December 6, 2016 reversing the determination and ordering that the Medicaid application be reinstated as of November 9, 2015. However, this Initial Decision was reversed by the Agency Director and remanded for additional proceedings.

Krupka died on July 2, 2017. A subsequent Fair Hearing was held on August 28, 2017. The September 11, 2017 Initial Decision concluded that the Medicaid application should be granted from November 9, 2015 until July 2016 if Krupka was deemed eligible.[2] Krupka was subsequently determined eligible for Medicaid on a subsequently filed Medicaid application from Essex County beginning on July 1, 2016 until his death. The Complaint pleads Medicaid eligibility is still needed for the period from August 1, 2015 to June 30, 2016.[3]

**C. Procedural Posture**

Plaintiffs filed a Complaint before this Court on September 9, 2016. Defendants filed a Motion to Dismiss on December 5, 2016, which this Court denied as moot on July 11, 2017.

---

[2] Krupka was being moved from Passaic County to Essex County in July 2016.

[3] Plaintiffs' opposition brief states that the Initial Decision was overturned on December 7, 2017, after the filing of the Amended Complaint in this action.

6

Plaintiffs thereafter filed their November 16, 2017 Amended Complaint, which brings several claims for violations of the Federal Medicaid Act pursuant to 42 U.S.C. § 1983. In particular, Plaintiffs claim the following violations: (1) violation of the Federal Medicaid Act for failing to grant a reasonable extension of time; (2) violation of 42 U.S.C. §§ 1396a(a)(10)(C)(i)(III), 1396(r)(2)(A), 1396p(c), and 1396r-5(b)(1) for using a too restrictive methodology for assessing resource eligibility; (3) violation of 42 U.S.C. § 1396a(a)(10)(A) for failing to allow a full and fair opportunity to present documentation showing Medicaid eligibility; (4) violation of 42 U.S.C. § 1396a(a)(8) and 42 C.F.R. 435.911 for failing to process the Medicaid applications properly and promptly; (5) violation of 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. 431.250 by failing to allow Plaintiffs to present certain documents at the Fair Hearing; and (6) violation of 42 U.S.C. § 1396p(c) and N.J.S.A. 30:4D-3(i)(15)(b) for imposing overly restrictive eligibility requirements.

Plaintiffs' claims are asserted against Elizabeth Connelly and Megan Davey. Connelly at the relevant time was the Commissioner of the New Jersey Department of Human Services, which supervises the administration of the Medicaid program in New Jersey. Davey at the relevant time was the Director of the

New Jersey Division of Medical Assistance and Health Services, which is responsible for the administration of the Medicaid program.

Defendants filed a Motion to Dismiss the Amended Complaint on December 6, 2017.[4]

## II.

The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 and the Federal Medicaid Act.

## III.

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

---

[4] The Court notes that Plaintiffs requested oral argument in this matter. The Court finds the parties' written submissions sufficient for this Court to decide the pending motion and denies the request for oral argument.

8

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); and then citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

> To determine the sufficiency of a complaint, a court must take three steps. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Malleus v. George, 641 F.3d 560, 563 (3d Cir. 2011) (alterations in original) (citations omitted) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 664, 675, 679 (2009)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." Twombly, 550 U.S. at 563 n.8 (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all

9

civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

## IV.

The Court begins by addressing Defendants' argument that this Court must abstain from hearing this matter under Younger abstention. Defendants argue Plaintiffs are proceeding with administrative appeals that are being processed and Younger abstention should thus apply.[5] Generally, "federal courts are obliged to decide cases within the scope of federal jurisdiction." Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013). Thus, "[a]bstention is not in order simply because a pending state-court proceeding involves the same subject matter." Id.

"Younger exemplifies one class of cases in which federal-court abstention is required: When there is a parallel, pending state criminal proceeding, federal courts must refrain from

---

[5] The Court is unaware of the current status of these administrative appeals.

enjoining the state prosecution." Id. The Supreme Court "has extended Younger abstention to particular state civil proceedings that are akin to criminal prosecutions, or that implicate a State's interest in enforcing the orders and judgments of its courts." Id. (citations omitted) (first citing Huffman v. Pursue, Ltd., 420 U.S. 592 (1975); and then citing Pennzoil Co. v. Texaco Inc., 481 U.S. 1 (1987)).

The Supreme Court has categorized three "exceptional" cases "fitting within the Younger doctrine": (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." Id. (quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 367-68 (1989)). Where a matter does not fit within one of these three exceptional cases, "the general rule governs: '[T]he pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. (alterations in original) (quoting Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 817 (1976)). "Younger extends to the three 'exceptional circumstances' identified . . . but no further." Id. at 593-94.

The administrative proceeding is clearly not a criminal prosecution or a civil enforcement proceeding. The Court

11

further concludes that Plaintiffs have not shown the administrative proceeding falls within the third category such that hearing this federal action would interfere with essential judicial functions.

This Court must follow Sprint and its progeny. Defendants, in arguing for Younger abstention, appear to rely on a purported test for the doctrine that the Supreme Court has since disclaimed. In Sprint, the Supreme Court noted that the Eighth Circuit had read its earlier decision in Middlesex County Ethics Committee v. Garden State Bar Association, 457 U.S. 423 (1982) to provide for Younger abstention when the following conditions were met: (1) there was an ongoing state judicial proceeding; (2) such proceeding implicated important state interest; and (3) the state proceeding provided an adequate opportunity to raise federal challenges. Sprint, 134 S. Ct. at 593. This is the test Defendants make their argument under.

However, the Sprint Court noted the "extraordinary breadth" of the Middlesex test was such that Younger abstention would extend "to virtually all parallel state and federal proceedings, at least where a party could identify a plausibly important state interest." Id. The Sprint decision thus sought to clarify and affirm the "exceptional circumstances" to which Younger applies. Id. at 593-94. This is not an exceptional case to which Younger abstention applies under the framework

provided in Sprint.

**V.**

Defendants argue they are immune from Plaintiffs' claims because Plaintiffs request retroactive damages against officers of the State. The Court agrees. "[T]he Eleventh Amendment . . . has been interpreted to render states – and, by extension, state agencies and departments and officials when the state is the real party in interest – generally immune from suit by private parties in federal court." Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002). "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Id. Plaintiffs appear to argue this third exception, the doctrine of Ex parte Young, 209 U.S. 123 (1908), applies, arguing that they seek "prospective injunctive relief." Plaintiffs' Amended Complaint demands the following judgment:

- Enjoining the Fair Hearing set for December 30, 2017 on the matte [sic] of the Plaintiff, Dominic Radogna, from proceeding in the state administrative law court;

- Mandating that the defendants rescind the December 18, 2018 Medicaid denial for the plaintiff, Dominic Radogna and reinstate the Medicaid application for Dominic Radogna;

13

- Mandating that the defendants promptly process the Medicaid application for the plaintiff, Dominic Radogna, within the time frames provided under state and federal law;

- Mandating that the defendants rescind the April 9, 2016 Medicaid denial for the plaintiff, Solomon Krupka, and reinstate the Medicaid application for Solomon Krupka.

- Mandating that the defendants promptly process the Medicaid application for the plaintiff, Solomon Krupka, within the times frames provided under state and federal law;

- Awarding Plaintiff attorney's fees and costs pursuant to 42 U.S.C. § 1983; and

- Awarding such other relief as the court may deem just and equitable.

In sum, Plaintiffs ask that this Court mandate Defendants rescind their original denials, reinstate the Medicaid applications, and reprocess them. While the Complaint does not explicitly plead it, if the Court were to find Plaintiffs' various claims of violations to be meritorious, it is Plaintiffs' expectation that the reprocessing of the applications would result in the applications being approved and Plaintiffs receiving withheld payments.

The Third Circuit's recent decision in Williams v. Connolly, No. 17-3569, 2018 U.S. App. LEXIS 6756 (3d Cir. Mar. 19, 2018) is instructive here. The plaintiff in Williams had cognitive difficulties. Id. at *2. Her son cared for her for a period of time, during which the plaintiff purchased her son's

14

home for $379,122.  Id.  Thereafter, the plaintiff suffered physical injuries and was diagnosed with Alzheimer's disease. Id.  The plaintiff was transferred to a long-term care facility, and her son purchased his home back for one dollar.  Id.

The plaintiff later applied for Medicaid assistance from the Cape May County Board of Social Services.  Id.  It was ultimately determined that the plaintiff was subject to a "transfer penalty" for transferring her home for less than market value.  Id.  The plaintiff thereafter filed suit in the District of New Jersey, suing Defendants Connolly and Davey, among others, in their official capacities.  Id. at *5-6.  The district court in Williams granted the defendants' motion to dismiss on Eleventh Amendment grounds, finding the plaintiff was seeking a damages award from the State based on a past action. Id. at *5.  The Third Circuit affirmed:

> Williams seeks declaratory and injunctive relief regarding Defendants' interpretation of the caregiver child exemption and, in particular, injunctive relief requiring Defendants to reevaluate her Medicaid application and find her eligible for benefits without a transfer penalty.  That would mean awarding her Medicaid benefits that were withheld as a result of the imposition of transfer penalties, and those benefits would be paid out of State funds.  The Eleventh Amendment bars this type of retroactive relief against the State.

Id. at *7.

The Third Circuit further found the Ex parte Young exception did not apply based on Edelman v. Jordan, 415 U.S. 651

15

(1974). The Third Circuit explained:

> The plaintiff in Edelman asserted that state officials were improperly administering a federal-state aid program. The plaintiff sought, among other things, an injunction requiring the defendants to award the class of plaintiffs all benefits that were wrongfully withheld. The Court observed that an order in the plaintiffs' favor would have required "payment of state funds, not as a necessary consequence of compliance in the future with a substantive federal-question determination, but as a form of compensation" that would be "measured in terms of a monetary loss resulting from a past breach of a legal duty on the part of the defendant state officials." Such an "award resembles far more closely the monetary award against the State itself . . . than it does the prospective injunctive relief awarded in Ex parte Young."

Williams, 2018 U.S. App. LEXIS 6756, at *6 (citations omitted) (quoting Edelman, 415 U.S. at 655-68).

The Court finds Plaintiffs' requested relief, while phrased as a request for prospective injunctive relief, is in reality a demand for payment of withheld Medicaid benefits that would necessarily be derived from the State treasury.[6] No matter how artfully formed, this request, in function, would require a damage award. "[T]he bar on retroactive relief includes forms of equitable relief that are functionally equivalent to damage awards." Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs., 730 F.3d 291, 319 (3d Cir. 2013). The district court's explanation in Williams is helpful in showing

---

[6] To the extent the request to enjoin the December 30, 2017 hearing is a request for injunctive relief, this request is moot, as the date of such hearing has passed.

16

the distinction between the kind of prospective injunctive relief contemplated by Ex Parte Young and the relief requested in this case.

The Williams district court noted that, while "withheld benefits . . . could be characterized as an 'ongoing violation of federal law,' in that the occurrence of any event, big or small, penalty or not, always echoes on into the future," "that metaphysical difficulty did not stop the Court in Edelman from finding that an injunction to remit the withheld welfare benefits was retroactive." Williams v. Connolly, No. 17-1631, 2017 U.S. Dist. LEXIS 188775, at *27 (D.N.J. Nov. 15, 2017), aff'd, 2018 U.S. App. LEXIS 6756. Comparing the Williams case to Edelman, the Williams district court concluded that "if the remittances in Edelman were remedies redressing past actions, and those remedies were subject to the bar on retroactive relief, so too [was the] previously-imposed penalty." Id.

The only case from the Third Circuit that Plaintiffs rely on in opposing Defendants' Eleventh Amendment argument is Eder v. Beal, 609 F.2d 695 (3d Cir. 1979). This case does not support Plaintiffs' position. Indeed, the Third Circuit noted as much in its March 19, 2018 opinion. See Williams, 2018 U.S. App. LEXIS 6756, at *7 n.4 (stating that Eder v. Beal, which the plaintiff relied on, was "inapposite" because it involved injunctive relief regarding notice requirements).

Eder concerned whether a state was required to comply with the notice requirements for terminating a program that was determined to be in violation of federal law. Eder, 609 F.2d at 696. The Eder court found the state was required to comply with the notice requirements. Id. at 701. The court recognized that this would require the state to provide benefits for a period of time. Id. The appellees in that case argued "that an injunctive remedy [wa]s barred by the eleventh amendment because Medicaid recipients w[ould] be enabled to apply for benefits which had been denied before." Id. at 701 n.13. The Third Circuit rejected this argument, finding "[t]he injunction sought is prospective only." Id. The court reasoned that "[t]he fact that the state may incur costs in complying with the federal mandate upheld by this injunction is no barrier." Id. The injunctive remedy in that case was requiring the state to comply with the notice requirements, which had accompanying costs to the state. That is unlike this case, in which Plaintiffs essentially ask for reprocessing of their Medicaid applications to obtain allegedly withheld benefits which accrued in the past. Payment of these benefits is not merely ancillary to some other prospective relief being awarded. Rather, the "prospective relief" of mandating the reprocessing of the Medicaid applications would presumably require payment of entirely retroactive payments.

The Court concludes Plaintiffs' claims are barred by the Eleventh Amendment. Accordingly, Defendants' Motion to Dismiss will be granted. An appropriate Order will be entered.[7]

Date: August 24, 2018
At Camden, New Jersey

s/ Noel L. Hillman
NOEL L. HILLMAN, U.S.D.J.

---

[7] To the extent Plaintiffs argue the Eleventh Amendment does not provide immunity here because Plaintiffs are bringing their claims under a Monell theory, "Monell claims can only be brought against municipalities, not individuals." Porter v. Crozer Chester Med. Ctr., Inc., No. 16-2252, 2017 U.S. Dist. LEXIS 84678, at *20 n.8 (E.D. Pa. June 1, 2017).